DELIA W. HENRY ET AL. *v.* THOMAS R. HENDERSON, EXECUTOR.

1. WILLS. *Title to lands. Income.*

  Where title does not, by the terms of a will, vest in the devisee until payment of legacies, he is not entitled to the income of the devised lands until the legacies have been paid, but, upon their payment, is entitled to the income thereafter accruing.

2. SAME. *Construction. Powers of executors. Crops.*

  Where a will provided that the executor should take charge of the lands and apply the income thereof to the payment of certain legacies "as soon as practicable," and should use the money on hand in making a crop for the year, and it was shown that, in order to pay all the legacies out of the proceeds of the crop for that year, it would have been necessary to borrow money to operate the farm for the next year, the executor was not bound to pay all the legacies out of such crop, but was justified in postponing payment until harvesting the crop for the next year.

3. SAME. *Improvement of real estate.*

Where a will, after several devises, gave the executor power to manage and control the residue of testatrix's estate for the benefit of her nephews until the youngest became of age, he was justified in building a ginhouse thereon out of the proceeds of a year's crop from the whole estate, without order of the court.

4. SAME. *Annuities. When payable.*

Where a will charges an annuity on the yearly income of certain lands, to continue for the life of testatrix's husband, the annuity is payable at the end of each year.

5. SAME. *Nonapportionable.*

An annuity, charged by a will on the income of certain lands, to continue during the life of testatrix's husband, and payable at the end of each year, is not apportionable where the husband dies during the year, and the annuitant is not entitled to any portion thereof for that year.

6. SAME. *Legislation suggested.*

The legislature should pass a counterpart of the act, 33 and 34 Vic., ch. 35, making annuities apportionable.

FROM the chancery court of Leflore county.

HON. A. MC. KIMBROUGH, Chancellor.

Mrs. Henry and others, appellants, were complainants in the court below; Henderson, executor, was defendant there. From the final decree rendered in the cause by the court below the complainants appealed to the supreme court, and the defendant prosecuted a cross-appeal. The case was once before in the supreme court, on appeal by Mrs. Henry and others, complainants, from a decree sustaining a demurrer to the bill of complaint. The decision then made, reversing the decree, is reported, *Henry* v. *Henderson,* 79 Miss., 452.

Mrs. L. H. Henry died in 1898, leaving a will in which T. R. Henderson was named as executor, and he duly qualified as such and took charge of the large estate, both real and personal, that belonged to the testatrix. By her will Mrs. Henry made various bequests and devises and provided a number of legacies to various parties, and directed them to be paid out of

the money on hand at the time of her death, and any balances unpaid to be paid out of the income of her estate. Certain annuities were also fixed upon this income, and to some of the complainants certain lands were bequeathed, and to others legacies. The residue of the estate was to go into the hands of the executor, to be by him managed and controlled for the benefit of two children, named Craig, nephews of the husband of testatrix, until the youngest became of age. In 1898 a codicil to the will was executed, revoking certain of the provisions of the will and gave to complainants certain lands in fee simple, and, afterwards, a second codicil was made, in which it was provided that the legal title to the land devised by the first codicil to appellants should not vest until after her husband's death and until after all the legacies were paid. This codicil further provided that these lands, as well as all of testatrix's other lands, should be taken charge of by the executor and used and controlled by him, and the income from them was directed to be used exclusively for the benefit of testatrix's husband, J. P. Henry, during his life, and then to be used for the payment of any legacies unpaid, and, after the husband's death and the payment of all legacies, complainants were to have the said property. The will further provided for the payment of an annuity of $300 to Mrs. Delia W. Henry during the lifetime of J. P. Henry, who died in about one and one-half months after the testatrix died. The will further provided that the executor should use the money on hand, with the proceeds of the sale of certain named property, in making and gathering a crop for the year.

The executor made the crop of 1898, and, not having enough money with which to pay all the debts and legacies, after putting aside money with which to make the crop, he made and gathered another crop in 1899, out of the proceeds of which he paid all legacies and debts, and had a surplus of about $2,000. In 1899 he rebuilt upon the land belonging to the residue of the estate a ginhouse, at a cost of $2,000, without any order

of the court.　He paid Mrs. Delia W. Henry only $100 of the annuity provided for in the will, and refused to turn over to complainants any share of the surplus from the crops of 1899.

Complainants asked that the executor pay the $200 unpaid of the annuity to Mrs. Delia W. Henry; that he pay to them the entire income of the land devised to them for the year 1899, or, if mistaken in that, then that he pay them their *pro rata* share of the surplus for that year, and also that he pay them their proportionate part of the amount expended for the gin-house outfit; and for a construction of the will.

The court below rendered a final decree, giving complainants their proportionnte parts of the surplus for the year 1899, but denied them any part of the money expended for the ginhouse outfit, and denied Mrs. Delia W. Henry the balance of the annuity.

*S. R. Coleman*, for appellants.

Mrs. D. W. Henry is clearly entitled to have received from the executor all of the annuity as provided in the second codicil of the will.　It stands out clearly and distinctly that, having withdrawn the land devised in fee to her and her six children in the first codicil, the intention of the testatrix was to give Mrs. Henry this amount as a support, while the property was temporarily withheld for other purposes.

It was not contemplated or intended, nor was it necessary, that this property, devised in fee to complainants, should be held by the executor for more than the crop season of 1898. J. P. Henry, an aged paralytic, whose condition his wife knew, could hardly outlive her, and if so, then not for long, so the testatrix limited the making of "a crop" ("the crop") by her executor to that year.

As in her will she directed the payment of the legacies out of the money on hand, and any residue to be charged to the income, so, by her last codicil, she provided a fund, which, together with the income of the year 1898, she knew would be

ample to pay and which would have paid all the legacies, as shown by the testimony of the executor, and the property devised to complainants should have been turned over to them at the end of that year.

As the will of the testatrix made no reservation of any money to carry on the farming operations on the residue of the estate, so it is idle to contend that the funds provided in the last codicil were for that purpose, and a sufficient amount from the crop of 1898 and the crop of 1899 was authorized to be kept by the executor for farming operations, to go to the end of his duties as a part of the residuum of the estate.

Construe the will and its codicils according to the intention of the testatrix, as reached by the rules of common sense and the ordinary and every-day meaning of words, is all that we ask, and we are satisfied that Mrs. Henry will get her $200 balance and interest, and that the complainants will at least get the rental value of their property for the year 1899. In 1900 the land devised to them was turned over by the executor.

*A. F. Gardner*, for appellee.

By reference to the last codicil made on the 20th day of January, 1898, it will be seen that it was clearly the purpose and intention of the testatrix to provide a fund which should be separate and distinct from the remainder of the estate, with which to make a crop for the year 1898, this fund to consist of what money was on hand at her death, together with the proceeds of the sale of any personal property raised on said plantation, and which might be unsold at her death, and all notes due her. This fund was not to be touched or used in any way except for the purpose of making a crop.

Complainants contend that it was the intention of the testatrix that this fund which was provided to make a crop, should also be used, with the proceeds of the sale of the crops, for the purpose of paying off the legacies and debts, but such, it is

patent from the reading of the last codicil was not her intention.

It will also be seen· from the last codicil that the testatrix provided "that it is my further will that the bequest made by me to Mrs. D. W. Henry and her six children of certain land in Leflore county as shown by said codicil made on January 4, 1898, shall not take effect until after the death of my husband and until after all legacies are paid, that is to say, the property bequeathed as aforesaid to her and her children shall be used, controlled and managed by my executor until after the death of my husband, and until after the payment of all legacies ; and the income from said property shall be used exclusively for the benefit of my husband, and at his death shall be used as aforesaid, with my other property, for the payment of any legacies unpaid. After his death, and after all legacies are paid, then they are to have said property as hereinbefore provided." The next codicil of the will provides a fund with which to make a crop, and also provides "that should there be more than enough money on hand at my death, together with the proceeds of the sale of said personal property, and of said notes, then my said executor, who has full authority to act in the premises, shall, at his discretion, should there not be enough money with which to pay all the legacies herein provided in full, prorate the amount over and above the amount necessary to make said crop. It being my intention that no legacies shall be paid until after my executor shall become satisfied that he has enough money on hand, devised as aforesaid with which to make and gather said crop."

Can it be said from this provision in the will that the testatrix intended that this fund with which to make a crop should be used to pay legacies ? Is it not evident from this provision that the legacies were to be paid from any surplus arising over and above this fund necessary with which to make a crop ? Complainants were to have no interest in the property—that is, the property was to be used, controlled and managed by the

executor until after all legacies were paid, and until that contingency happened complainants had no interest whatever in the property.

The surplus for the year 1899 was a part of the income of the common property, and as such belonged to the Craig boys, the beneficiaries under the will. By reference to the first part of the will it will be seen that the testatrix devised the real estate to the Craig boys during their natural lives, and provided that the income from said property should be paid annually to said minors, after the payment of annuities—in other words, the income from the property under the will went to the Craig heirs, and complainants had no interest in it.

This surplus was made out of this property at a time when complainants had no right to use, control or manage it in any way, and any profits cleared by the executor from this land, at a time when complainants had no right to control, use or manage it, is a part of the income of the property, and as such, under the will, goes to the Craig heirs, the beneficiaries. To hold otherwise, it seems to us, would be to say that for a part of the time the executor had a right to use, control and manage it, and a part of the time complainants had the same right, which is impossible. The last contingency upon which complainants' title depended, to wit: The payment of the legacies, did not happen until the fall of 1899, after the crop had been made and after all profits had been cleared, a part of which complainants seek to recover in this suit.

The building of the gin is shown to have been a necessity to the common property. The rebuilding of this gin was as much a work of necessity on this common property as the rebuilding of any barn or cotton house on the place. Under the will the executor did not know one part of this property from another; it was common property to be used, controlled and managed by him as an entirety.

Under the terms of the will Mrs. Henry was to receive $300 a year during the life of Dr. Henry, the husband of the testa-

trix.   Ordinarily, annuities are not apportionable.   Mrs.
Henry had no just cause of complaint whatever.   The fact is,
it might have been correct and the proper thing for the exec-
utor to refuse to pay anything, but, as the bill shows, he paid
her $100, one-third of the annuity, when Dr. Henry only lived
about two months after the death of the testatrix.   We are
unable to understand upon what possible theory Mrs. Henry
can claim the entire sum, when the party, during whose life
she was to receive $300, did not live a whole year.

WHITFIELD, C. J., delivered the opinion of the court.

The facts in this case show very careful and wise manage-
ment on the part of this executor.   He was acting throughout
strictly within the very large discretion given him by the testa-
trix.   She manifestly reposed unbounded confidence in him,
and gave him almost unlimited power.   We think his conduct
justified that confidence.   The only matter, therefore, left for
consideration is to point out the proper construction of the will,
so far as called for by the facts of this case.   When the testa-
trix, by the second codicil, provided that the legal title to the
land devised by the first codicil to appellants should not vest
until after her husband's death, and, still further, until after
all legacies had been paid, and provided further that these
lands also should be taken charge of, used, controlled and man-
aged by the executor, just as all other lands not devised, it was
her clear purpose that her whole plantation should be in the
exclusive charge of the executor until all legacies had been paid
from the income, and that appellants could not have had the
legal title until that time, and, as a result, no interest in the
income earned by the farm during the time necessary to pay
the legacies.

It was the fact that the legacies had been paid " as soon as
practicable " which fixed the time for the vesting of the legal
title, and not the fact that the executor might have paid all
legacies on the 1st of January, 1899, if to do so would have

been impracticable. It is clearly shown that if the executor had paid all legacies from the crop of 1898 it would have been necessary to borrow money on the farm with which to operate the farm—that is, that part of it belonging to the two Craig boys—during 1899. The only time fixed by the testatrix for the payment of legacies was "as soon as practicable." The court was, therefore, correct in holding that the executor was not bound to pay all the remaining legacies out of the crop of 1898, but properly made a crop in 1899. The court was also correct in holding that the rebuilding of the ginhouse and press was justified as a necessary common charge on the whole property, and that the will gave the executor ample power to do that. But it remains to be said that the very moment the remaining legacies were actually paid in the fall of 1899, that instant the condition named in the will for the vesting of the legal title in the appellants was fulfilled, and all the proceeds of the crops grown on the land devised to appellants after that time followed the title and belonged to them. The court below was, therefore, correct in holding that the appellants were entitled to their pro rata share of the surplus remaining in the hands of the executor after the payment of the legacies. The action of the court below on the cross-appeal is, therefore, affirmed.

The settled doctrine as to apportionment of annuities, both by courts of law and equity, is that they are apportioned in respect to time. See Ency. of Law & Pro., vol. 2, p. 468, and Am. Dig. (Cent. Ed.), vol. 2, p. 674, and the authorities cited. Especially see Underhill on Wills, vol. 2, secs. 676, 677, and authorities. Particularly consult *Kearney* v. *Cruikshank*, 117 N. Y., 95 (22 N. E., 580); *Chase* v. *Darby* (Mich.), 68 N. W., 159 (64 Am. St. Rep., 347); *Heizer* v. *Heizer*, 71 Ind., 526 (36 Am. Rep., 202); and *Wiggin* v. *Swett*, 39 Am. Dec., 716, holding them not apportionable. It is true there are some exceptions noted in paragraph B of 2d vol. of the Cyclopedia, and in sec. 676, *supra*, of 2 Underhill on Wills;

and it is also true, in some states, annuities, like rents, have
been made apportionable.    But this case does not fall as to
the annuity herein within any of the specified exceptions, and
we have no statute as we should have, . making annuities
apportionable.    The matter has been regulated in England
from time to time by statute, until a proper act was passed
(33, 34 Vic., ch. 35), which made all annuities apportion-
able, and "declared that annuities should, like interest on
money loaned, be construed as accruing from day to day, and
shall be apportionable in respect to them accordingly," and
there are statutes in some states of this Union of like effect.
The only statute we have upon this general subject is § 2543 of
the code of 1892, which relates to rents exclusively.    It is
curious that the legislature, while dealing with the subject of
rents—themselves annual returns—should not also have dealt
with annuities.    Our legislature should promptly pass a coun-
terpart of the act, 33, 34 Vic., ch. 35.

The very best statement that we have seen on the law in gen-
eral, is the opinion of Judge Andrews, in 117 N. Y., 95 (22
N. E., 580).    Like our state, New York had no statute at that
time allowing annuities to be apportioned.    Judge Andrews
says: "We are not at liberty to decide in this case upon our
notions of natural equity and justice, provided the settled rule
of law fixes the rights of the respective parties, and determines
the question presented.    At common law, annuities were not
apportionable, subject, however, to two exceptions, viz.: where
the annuity was given by a parent to an infant child (*Hay* v.
*Palmer*, 2 P. Wms., 501; *Reynish* v. *Martin*, 3 Atk., 330),
or by a husband to his wife living separate and apart from him.
*Howell* v. *Hanforth*, 2 Wm. Bl., .1016.    These exceptions
were founded on reasons of necessity, and the presumption
that such annuities are intended for maintenance, and are given
in view of the legal obligation of the parent to support his in-
fant children, and of a husband to maintain the wife.    But,
with these exceptions, it was the uniform and unbending rule

of the common law, recognized by courts of law and equity, that annuities, whether created *inter vivos* or by will, were not apportionable in respect to time.    This rule, it has been said, ' proceeds upon the interpretation of the contract by which the grantor ·binds himself to pay a certain sum at fixed days during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation.'  Lumley on Annuities, 291.    It resulted from the general rule that, if the annuitant died -before, or even on, the day of the payment, his representatives could claim no portion of the annuity for the current year.    We refer to some authorities on the general subject: *Ex parte* Smyth, 1 Swans, 337, note; *Pearly* v. *Smith*, 3 Atk., 260; *Irving* v. *Rankine*, 13 Hun., 147 (affirmed 79 N. Y., 636); *Wiggin* v. *Swett*, 6 Metc., 194 (39 Am. Dec., 716); 3 Kent. Com., 470; Williams on Executors, 835; Hays & Jarman on Wills, 172, note.''

It will be seen that the inclination of the court of appeals in this case to break away from the rigor of the common-law rule and to apply an equitable construction in accordance with the presumed intention of the testator is marked, but the court felt bound, in the absence of statute and in the absence of any expressed or implied direction in the will that the annuity should be apportioned, to hold it nonapportionable, although the annuitant was an adopted daughter and the annuity was clearly intended for support and maintenance.    The reason underlying the rigid common-law rule that annuities cannot be apportioned is not only, as pointed out by Judge Andrews, that it proceeded upon the interpretation of the contract by which the grantor binds himself to pay a certain sum, at fixed days, during the life of the annuitant, and that when the latter dies, such day not having arrived, the former is discharged from his obligation, but also because, as stated by Paxson, J., in *Wilson's appeal*, 56 Am. Rep., 216, that annuities are not like interest, which accrues from day to day, but like dividends, which cannot be said to accrue at all, but are declared at the

pleasure of a board of managers. He says: " In such cases," that is, in the case of annuities, " there is no paying of interest upon anything. They are fixed sums, payable at stated days, and until those days arrive there is nothing rendered and nothing due." In other words, the reason rests not only upon the fact that an annuity is usually payable upon a day certain, but also, and chiefly, upon the very nature and character of the annuity as not accruing from day to day, and hence not apportionable. Such is the general fixed rule, both in law and equity, in the absence of statute. The general exceptions are annuities given for the support of minors and for the support of married women living separate and apart from their husbands. And the reason for these exceptions is that pointed out by Judge Andrews in the opinion above. The necessity of apportionment, in order that they may be supported and maintained, is clearly set out by DeGrey, C. J., in *Howell* v. *Hanforth*, 2 Wm. Bl., 1016, as follows: "And, though rents and common annuities are not apportionable either by law or equity, yet in equity the maintenance of infants is always apportioned up to the day of their deaths, etc., because it would be difficult for them to find credit for necessaries if the payment depended on their living to the end of the quarter. This case depends on similar principles, the annuity being for a separate maintenance for a *feme covert.*"

This does not accord very well with the observations of Woolfolk, J., in *Blight* v. *Blight*, 51 Pa., 425, that the widow there was just as much entitled to the annuity, though very rich, as " if she had been dependent on it for her daily bread." This last case was the case of a widow to whom an annuity had been given in lieu of dower, and the principle in such cases, well settled independently of the idea of necessity for maintenance and support, is that, since the annuity stands in the place of dower, it must last as long as dower—that is, until the death of the widow.

There is an exception to the effect that interest on money

loans is apportionable. It is said that interest differs from dividends, loans, pensions, and annuities, in that it accrues *de die in diem*. Judge Paxson, in Wilson's Appeal, *supra*, points out the inequity and arbitrariness of this rule, saying "that modern legislative and judicial decisions have steadily tended to narrow the rule and enlarge the exception;" citing *Gheen* v. *Osborn*, 17 Serg. & R., 171 ; *Blight* v. *Blight*, 51 Pa., 420. In the former of these two cases it is very well pointed out that, owing to the difference in descent of land in England and in this country, it may be often material whether rent and annuities charged on lands go to the heir or the executor, when, under the same circumstances, it would be perfectly immaterial here. It is observed that it has been settled in this country that an annuity for the support of daughters is to be apportioned, and that case decided that an annuity to a wife for her separate maintenance must be apportioned. But it must be carefully noted that the particular case was one in which the will gave the annuity in lieu of dower. In *Sweigart* v. *Berk*, 8 Serg. & R., 308, the court said, in answer to the query whether interest was apportionable on a gross sum which had been received for dower, the widow joining in the conveyance: " The only objection to the plaintiff's claim is that the interest is payable yearly ; but I apprehend that in equity, in a contract like this, the interest accrues from day to day."

The British legislature interfered by statute, and made an apportionment in case of certain rents ; and courts of equity have been much inclined to follow the example of that statute in other cases because apportionment is generally equitable. Where by marriage settlement the maintenance of daughters was made payable half-yearly until the portion became payable, which was at the age of eighteen or marriage, and a daughter attained her age at eighteen, before the day of the half-yearly payment, equity decreed an apportionment. *Hay* v. *Palmer*, 2 P. Wm., 501. I apprehend that the rule is the same, where provision is made for a widow. But this language is used, it

must be carefully noted, as applicable to an annuity agreed to
be paid in lieu of dower.    It is true the language of the
opinion indicates a leaning to the utmost equitable construction
in favor of an apportionment.

The strongest case we have seen in favor of extending the
principle of equitable apportionment is the *Lackawanna Iron
& Coal Co. case*, 37 N. J. Eq., 26.    It was held that an annu-
ity, charged in a conveyance from grandfather and grandmother
to the husband of the granddaughter in favor of the grand-
mother for $200 per annum during the term of her natural
life, was a family arrangement, and the court observed: "The
principle of the cases which constitute the exceptions to the
general rule is applicable here.    The annuity appears to have
been a provision for support, and it is not to be supposed that
it was intended that Mrs. Stinson should be liable to lose the
benefit of the provision for the year in case she should not live
till the end of that period.    The annuity might constitute her
sole means of subsistence, and, if it had been understood that
it was not apportionable, she could have obtained no credit
upon it.    Undoubtedly, the understanding and intention were
the contrary, and it is equitable to hold that, under the cir-
cumstances, the annuity was apportionable, and consequently
that her administrator is entitled to a proportionate part for
the period in question."    The language of the court manifestly
proceeded upon the idea that in the case of a widow to whom
an annuity has been granted for a support, even when not in
lieu of dower, is within the principle which controls the cases
of minors and married women living apart and separate from
their husbands.    If we leave out of view this language, which
goes further than any language we have seen, and recur to the
particular case then before the court, it will appear that Mrs.
Stinson joined her husband, John Stinson, for the purpose of
barring her dower, and consequently the annuity to her was in
lieu of dower.    We think the court might better have decided
the case upon that ground.

There is another curious case, *Atty. Gen.* v. *Smythies*, 16 Beav., 385, in which it was held that the exception as to minors, and married women living separate, might be extended to the apportionment of the income of a fund belonging to a charitable corporation having for its object the support of poor persons. We have noticed every case we have been able to find in which opinions have declared a strong disposition to break away from the rigor of the common-law rule in favor of equitable apportionment. And the result of this review clearly is, whatever the language in some of the cases, that all the cases on their facts fall within the specified exceptions, unless possibly the case in 16 Beav. Before leaving this subject we want to add one observation: That the supreme court of Pennsylvania properly points out, in Wilson's Appeal, *supra*, that the English consols are markedly different from the public debt of the United States, the court saying "the English consols are but annuities; the interest only is paid, the principal is never reimbursed, and the government can only redeem them by buying them in the market. The reasoning in the English cases goes upon the ground that the interest does not accrue day by day, which is entirely true of their consols." The supreme court of Pennsylvania holds that, on account of the difference, the income on United States bonds and bonds of the states of the nation is apportionable.

So far as the time when this annuity was payable is concerned, no time having been fixed in the will, and it being payable out of the yearly income of the farm, it is obvious it was to be paid at the end of the year. This is made perfectly plain by Judge Andrews in the case of *Kearney* v. *Cruikshank*, *supra*, where the court say: The learned counsel for the plaintiff insists that the common-law rule of the nonapportionability of annuities only applied where the day of payment is specifically fixed in the instrument creating it, and had no application to the case of an annuity given in general terms, as in this case, no day of payment being specified. It is quite difficult

to see any ground for the alleged distinction. The ordinary and natural meaning of a direction by one person to pay another a specified sum "annually" or "each year," is that the specified sum is to be paid in an annual or yearly payment. The word or phrase, naturally interpreted, would be regarded as fixing both the measure and time of payment. It would, we think, be contrary to the well-understood meaning and characteristics of an annuity, and to the settled rule that, in the absence of a different direction in the will or instrument creating it, an annuity is payable annually, or yearly, at the end of the year, to restrict the application of the common-law rule of nonapportionability to cases of where the date of the payment is explicitly declared in the instrument creating it.

The term "annuity" has been variously defined, but the definitions, although differing in form, are substantially alike in meaning. In general terms, it is "a yearly payment of a certain sum of money granted to another in fee for life or for years." Williams on Executors, 809. See, also, Lumley on Annuities, 1; Bac. Abr., tit., "Annuity." It has long been the settled rule that, in case of a will, if no time is fixed, an annuity given thereby commences from the day of the testator's death, and the first payment is to be made at the end of twelve months from that time. Williams on Executors, 1288; *Gibson* v. *Botts*, 7 Ves., 89; *Houghton* v. *Franklin*, 1 S. & S., 390. This accords with the definition of an annuity, its inherent character, and the language of the testator as naturally construed. We have found no case where the distinction is made that, where no time is expressly fixed by the will for the payment of an annuity, it grows due like interest, *de die in diem*, and, in case of the death of the annuitant within the year, is apportionable. The authorities are opposed to this view.

Judge Andrews also points out in this case that, notwithstanding the rule, an annuity may be apportionable if the will expressly, or by necessary implication, directs the annuity to

be apportioned.    There is nothing in this will containing any such direction, expressly or impliedly.         .

In view, therefore, of the following reasons: First, that Mrs. D. W. Henry is not within any of the established exceptions; second, that there is nothing in the will expressly or impliedly directing apportionment; third, that the annuity was payable at the end of the year out of the income from the crop; and, fourth, that Mr. Henry died within two months after the will took effect and the annuity vested; and, fifth, that we have no statute allowing it, we are constrained to hold that this annuity was not apportionable.    The payment by the executor of the $100 is not complained of, however, and is not before us.    We may remark, in passing, that, if it had been apportionable, the executor has paid Mrs. Henry more than she was entitled to receive.

*The result from these views is that the decree on the direct appeal must also be affirmed.*