JOHN WILSON BROWN ET AL., TRUSTEES, *vs.* WIL-
LIAM S. KEECH ET AL., ADMINISTRATORS
OF LAURA J. KOFFMAN.

*Apportionment of Annuities.*

The general rule is that an annuity is not apportionable, and if
the annuitant dies before the day fixed for payment, his per-
sonal representatives are not entitled to a proportionate part
of the annuity for the time between the last day of payment
and the day of his death.

Exceptions to this rule are made in the case of annuities given
by a parent for the support of an infant child, or by a hus-
band to his wife in lieu of dower, or for her support if living
separate from him.

An annuity given by a testator to his son's wife in case she sur-
vives her husband is not apportionable.

The will by which a trust was created for the benefit of the
testator's son provided that in case the wife of the *cestui que
trust* survived him the trustees should pay to her the sum of
$6,000 a year during her life, said annuity to commence from
the time of the death of the said son and to be paid quarter-
yearly.  The annuitant died between two of the periods at
which the annuity was made payable.  *Held,* that this an-
nuity is not apportionable and that the administrators of the
widow are not entitled to receive from the trustees the pro-
portion of the annuity from the time of the last quarterly
payment to her to the day of her death.

*Decided February, 2nd, 1910.*

Appeal from Circuit Court No. 2 of Baltimore City
(SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Arthur Geo. Brown* and *W. Irvine Cross,* for the appellants.

*Z. Howard Isaac* (with whom was *W. Gill Smith* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

Article eight of the will of George Brown is as follows: "In case my son Alexander D. Brown, shall leave a wife surviving him at the time of his decease, then and in that event, I will, order and direct, that the trustees hereinbefore named in this my will, and their successors shall pay out of the interest, rents or net income, thereafter arising, from the two-fourteenths parts or shares of the aforesaid rest, residue and remainder of my estate and property, given in trust, for the use of my said son Alexander and his descendants, as particularly mentioned in the above article sixth of this, my will, to the wife or widow of my said son, so surviving him, as aforesaid, the sum of six thousand dollars a year, during her life, said annuity to commence from the time of the death of my said son, and to be paid quarter-yearly. And in case my daughter, Grace Ann, shall leave a husband surviving her, at the time of her decease, then, and in that event, I will, order and direct that the said trustees and their successors, shall pay out of the interest, rents or net income thereafter arising, from the two-fourteenths parts or shares of the aforesaid rest, residue and remainder of my estate and property, given in trust for the use of my said daughter Grace Ann and her descendants, as particularly mentioned in the aforesaid article sixth of my will, to the husband of my said daughter so surviving her as aforesaid, the sum of six thousand dollars a year, during his life; said last mentioned annuity, to commence from the time of the death of

my said daughter, and to be paid quarter-yearly. And in case my two grandchildren, Elizabeth Graham and George Brown Graham, shall both die before attaining the age of twenty-one years, and their father, William H. Graham, be then living, then, and in that event, I will, order and direct that the said trustees and their successors, shall pay out of the interest, rents or net income thereafter arising, from the two-fourteenths parts or shares of the aforesaid rest, residue and remainder of my estate and property, given in trust for the use of my said two grandchildren, Elizabeth and George B. Graham, as particularly mentioned in the aforesaid article sixth of my will, to the said Wiliam H. Graham, the father of the said Elizabeth and George B. Graham as aforesaid, the sum of six thousand dollars a year, during his life—said last mentioned annuity, to commence from the time of the death of the survivor of my said two grandchildren dying under the age of twenty-one years as aforesaid, and to be paid quarter-yearly."

Alexander D. Brown died on the 19th of March, 1892, leaving a widow, Laura J. Brown, who in 1907, married Charles H. Koffman and died on the 17th of June, 1908. The annuity was paid to her by the trustees under George Brown's will and their successors up to the 19th of March, 1908, and this appeal is by the trustees from an order of the Circuit Court No. 2 of Baltimore City, passed on the petition of the administrators *pendente lite* of her estate, requiring them to pay to said administrators the sum of fourteen hundred and fifty dollars on account of said annuity from the 19th of March, 1908, to the time of her death on the 17th of June, 1908.

The appellants rely upon the well established rule that annuities are not apportionable, while the appellees contend, and the learned Court below held, that it is evident from the provisions of the will that the testator intended the annuity as a provision for the support and maintenance of his son's widow, and therefore intended it to be apportioned.

The will, so far as it is set out in the record, does not direct that the annuity shall be apportioned, or state that it is for the support and maintenance of the annuitant, but counsel for the appellee base their contention on the fact that in the case of his son George, to whom the testator gave a portion of his estate absolutely, no provision, was made for his wife in case she survived him, while in the case of his son Alexander, whose share was left in trust for his use during life only, with remainders to his descendants, provision was made for his widow, as evidencing the intention of the testator to thereby provide for her support and maintenance and that the annuity should be apportioned.

Similar provisions were made for the surviving husband of the testator's daughter, and for the father of the testator's two grandchildren, in case they died before attaining the age of twenty-one years and he survived them, and if the fact that the testator did not give to his son Alexander any part of his estate absolutely indicates that he intended the annuity to his widow to be apportioned, it would follow that he also intended the other annuities to be apportioned, as he did not give to his daughter or to his grandchildren absolute estates in their shares; yet to hold these annuities apportionable, in the absence of some clearer evidence that the testator intended them to be apportioned, would extend the exceptions to the rule beyond the limit to which any well considered case has gone.

In the case of *Hay* v. *Palmer*, 2 P. Wms. 501, the annuity was expressly for the maintenance of the daughter of Sir Thomas Palmer until she became eighteen years of age or married, and the Master of the Rolls held that she was entitled to the annuity to the day she became of age, it being "for the daily support of the infant."

In the case of *Reynish* v. *Martin*, 3 Atk. 331, Elizabeth Philips by her will gave to her eldest daughter, Martha Philips, all her real estate in fee, "subject to such charges that shall be thereinafter expressed," and then made the following provision for her daughter Mary; "and it is my will

that my said daughter Martha shall pay to my said daughter Mary the sum of 30£ yearly during Mary's continuing sole and unmarried, by fifteen pounds each May day, and All Saints day;" and the LORD CHANCELLOR said: "Although this annuity, or half-yearly payment, is not expressly given for maintenance of Mary as in the case of *Hay* v. *Palmer,* 2 Vern. 501, yet I am clear of opinion that it must be understood so, and therefore falls within the reason of that case." In the case of *Howell* v. *Hanforth,* 2 Wm. Black. 1016, the annuity was provided by a husband for his wife, and the Court said: "Though rents and common annuities are not apportionable either by law or equity, yet in equity the maintenance of infants is always apportioned up to the day of their deaths, etc., because it would be difficult for them to find credit for necessaries, if the payment depended on their living to the end of the quarter. This case depends on similar principles, the annuity being for a separate maintenance of the *feme covert;* and, as it appears that the quarterly payments were not originally forward payments, by way of maintenance for the ensuing quarter (which might make a difference), but payable at the end of each quarter, in order to discharge the expenses incurred in the three preceding months, we think it ought to be apportioned."

In the case *Attorney-General* v. *Smythies,* 16 Beav. 385, "by letters patent of King James the First, a charitable corporation was created, having for its object the support and maintenance of a master and five poor persons. The master was to receive the income and pay the poor persons 2£, 12s, 0d, annually, by quarterly payments, for their support, relief and maintenance. Mr. Smythies, the master, died on the 24th of March, 1852; and a petition being presented by the new master for payment of the income, the executors of Mr. Smythies claimed an apportionment of the half year's income ending on the 5th July, 1852, upon a fund in Court belonging to the charity." The Master of the Rolls (Sir John Romilly) said: "I am of opinion that there must be an apportionment. The question does not rest upon the general

ground of cases not falling within the provisions of the Ap-
portionment Acts, but comes within the principle of the rule,
in cases of infants and married women who have no other
support.   I think this must be so, from the language in the
charter itself.   Here is an eleemosynary establishment, the
funds of which are directed by the statutes to be applied to
the support, relief and maintenance of five poor persons;
which upon proper construction of the letters patent, must
be *de die in diem,* for if it were otherwise, the alms people
might be unable to procure sufficient supplies for their sup-
port during portions of the year, in consequence of the risk
which those who supplied them would run of not being re-
paid.   For if they could not recover out of the fund what
was owing for supplies, they would be deprived of payment
altogether.   The same principle, I think, applies to the
master as to the five poor persons, and therefore there must
be an apportionment of the dividends between the present
and the representatives of the late master."   Mr. Swanston.
in an extensive note to *Ex Parte Smyth,* 1 Swanst. R. 338,
after stating the rule that rents and annuities are not appor-
tionable, says: "A remarkable exception to the general rule
has been introduced in the instance of annuities for the main-
tenance of infants (*Hay* v. *Palmer,* 2 P. W. 501; *Reynish*
v. *Martin,* 1746 MS.; *Sheppard* v. *Wilson,* 4 Here, R. 395),
or of married women living separate from their husbands
(*Howell* v. *Hanforth,* 2 Bl. 1016; 2 *Scholes & Lefr.,* 303);
an exception supported by the necessity of the case, and the
consequent presumption of intention (2 Bl. 1017; 2 P. W.
503), and therefore not extended to an annuity for the sepa-
rate use of a married woman, living with her husband and
maintained by him."

In the case of *Smith* v. *Wistar,* 5 Phil. R. 145, the testa-
tor devised certain ground rents, payable half-yearly, to his
wife for life, with remainder over to his sisters and their
children, and the Court said: "In *Green* v. *Osborn,* the gift
of an annuity to a widow in lieu of dower was held to entitle
her representative to an apportionment of payments which

had not fallen due, and which, in strict law, could never become so. The equity here is quite as strong as it was there, because the Act of April, 1833, makes every devise to a widow, accepted by her, a devise in lieu of dower. Bequests of money payable periodically, are said, in Earp's will, *Parsons' Equity Cases,* 453, 468, to be apportionable when given for maintenance or to someone whom it is the duty of the testator to provide or maintain. It seems to be conceded that a gift to a child is within this exception, and the rule should be the same in the case of a widow. Both may be presumed to stand equally near the affections of the testator, and the position of the widow is obviously preferable when she has accepted the legacy in lieu or bar of her dower, and claims as purchaser, and not merely as volunteer." In the case of *Blight* v. *Blight,* 51 Pa. St. 425, the annuity was payable quarterly, in lieu of dower, and the Court held that: "The annuity was in lieu of dower, and lasted as long as dower would have lasted, and dower runs to the last day of life."

In *Lackawana Iron & Coal Company's Case,* 37 N. J. Eq. 26, John Stinson and wife conveyed his farm to Nelson Vliet, the husband of their granddaughter, in consideration of an agreement on the part of the grantee (the performance of which was secured by his bond and mortgage of the property), to pay Stinson $250 yearly, on the 1st April, during the lifetime of Stinson, and if Stinson's wife should survive him, to pay, or cause to be paid to her, yearly the sum of $200 during the term of her natural life. Mrs. Stinson survived her husband, and died on September 19th, 1881. The annuity was paid up to April 1st of that year and her personal representatives claimed a proportionate part of the annuity to the day of her death. The Chancellor said: "There is no doubt that the general rule is that when an annuity is payable on a fixed day during life, and the annuitant dies before the day, his representative is not entitled to a proportionate part of the annuity for the time which has elapsed since the last day of payment. * * * But the rule as

to annuities has established exceptions in the case where an annuity is given for the maintenance of a wife living separate from her husband, or for the support of minor children. And the exception has been extended to the apportionment of the income of a fund belonging to a charitable corporation having for its object the support of poor persons. And also where the annuity has been given in lieu of dower. * * * The conveyance in consideration of which the agreement to pay the annuity was made, was evidently a family arrangement, and the only consideration of the conveyance of the farm to Mr. Vliet was the agreement to pay the annuities. It would seem, too, that the object of Stinson in making the arrangement, was to secure the payment of the annuity to him for life, and to his wife in case she should survive, for their support. She joined in the conveyance to bar her dower, and part of the consideration of her release was the agreement to pay the annuity to her for her life, in case she should outlive her husband. The principle of the cases which constitute the exceptions to the general rule, is applicable here."

In the case of *Parker* v. *Seeley,* 56 N. J. Eq. 110, the annuity was declared by the testator to be in lieu of dower, and the Court held that the widow was entitled to it to the time of her death. In *In re Cushing's Will,* 58 Vt. 393, the testator bequeathed to his wife, "the whole interest and income of six thousand dollars to be paid to her each and every year during her life; the first payment to be made at the close of one year after my decease, and so on annually thereafter as long as she shall live. And if said interest or income shall at any time prove insufficient to support her in a manner becoming her station and condition in life, and in such manner as shall make her comfortable, and meet all necessary expenses of a reasonable prudent course of life, then it is my will that so much of the said six thousand dollars shall be taken as shall be necessary to effect the object aforesaid." The Court held that she was entitled to the interest on the six thousand dollars to the time of her death, and said, treating this as an annuity, the proposition is sound that "annui-

ties are not in their nature apportionable either in law or in equity" (2 *Williams' Ex'rs.,* 835) ; but there are exceptions to the rule, and the same author says : "With respect to interest, interest, being *due die in diem,* is not one entire thing, but an aggregate of many distinct things, 'and may be apportioned.' The language last quoted was evidently borrowed from the note to *Clunn's Case,* reported in 10 Coke, 128a. The note is by Fraser, wherein he says, after the remark adopted by Williams : 'it is obvious, therefore, that the representatives of a party dying before the day at which interest was usually payable would be entitled to interest up to the time of the party's death.' \* \* \* In *Perry, Trusts,* par. 556, the author says : 'But where an annuity is given to a widow in lieu of dower, or for maintenance of an infant, or for the separate maintenance of a married woman, an apportionment is made on the ground that such annuity is necessary for support till the death of the annuitant;' and he says further : 'But interest money upon notes, mortgages, and similar securities accrues from day to day, although it is not payable until a fixed day, it is therefore apportionable, and trustees must pay the proportion accruing during the life of the tenant for life to his representatives.' "

These cases fairly illustrate the utmost limit to which the English and American decisions have gone in establishing the well defined exceptions to the general rule, while the Courts of other states have adhered more closely to the common law rule.

In 2 *Perry on Trusts,* sec. 556 (5th ed.), the author says : "At common law rent could not be apportioned; and if a tenant for life died near the end of a quarter, his representative could receive no part of the rent for the term." And after stating that the statutes in many of the States have made rent apportionable says : "But an annuity to a tenant for life is not apportionable, and if the tenant dies within three days of the day of payment, his representatives are not entitled to any proportion of the annuity. But where an annuity is given to a widow in lieu of dower, or for maintenance of an

infant, or for the separate maintenance of a married woman, an apportionment is made on the ground that such annuity is necessary for support till the death of the annuitant." The rule and the exceptions to it are stated in 2 *Cyc.* 468, as follows: "It was the uniform and unbending rule of the common law, recognized both by Courts of law and equity, that annuities, whether created *inter vivos* or by will, were not apportionable in respect of time."

"The rigor of the common law rule has been to some extent ameliorated in modern times by the recognition of certain well defined exceptions, as in cases where an annuity is given in lieu of dower, or for the separate maintenance of married women, or for the support of children, or where it consists of interest, or of other sums accruing, and therefore payable, *de die in diem.*" See also 1 *Am. & Eng. Ency. of Law,* 595; 1 *Story's Equity,* secs. 479, 480; 2 *Wms. on Ex.,* 49 note.

In the case of *Heizer* v. *Heizer,* 71 Ind. 526, a son agreed in writing, for a valuable consideration, to pay his father $100 annually on the 6th day of October, for his *maintenance* and *support* during his life, and the Court held that the annuity was not apportionable. In the case of *Wiggin, Administrator,* v. *Sweet,* 6 Metc. 194, a testator, among other bequests to his wife, gave her an annuity of $800, during the full term of her life, to be paid to her quarter-yearly, and payments were accordingly made to her for several years, and she died three days before the expiration of a quarter, and SHAW, C. J., said: "The general rule, both of law and equity is, and is admitted by the appellee's counsel to be, that where an annuity is payable on fixed days during life, and the annuitant dies before the day, the personal representative is not entitled to a proportionate part of the annuity. The same rule prevails in regard to rents and other payments on particular days. * * * As Mrs. Sweet died August 22d, 1840, that portion of the annuity which is supposed to have accrued from May 25th to August 22d, and which would have been payable, had she lived till the 25th of August, cannot be allowed. It falls within the general rule al-

ready stated, and not within the exceptions to that rule which were made in the cases cited by the appellee." In the case of *Dexter* v. *Phillips,* 121 Mass. 180, GRAY, C. J., said: "It is a general rule of the common law, followed in chancery, that sums of money, payable periodically at fixed times, are not apportionable during the intervening periods. It is accordingly well settled, both at law and in equity except when otherwise provided by statute, that a contract for the payment of rent at the end of each quarter or month is not apportionable in respect to time. * * * Thus annuities, except where clearly intended for the daily support of the beneficiary, as in the case of a child or of the separate maintenance of a wife, are within the rule." In the case of *Kearney* v. *Cruikshank,* 117 N. Y. 95, the testator directed his executors, "out of the residue and remainder of said net income of my estate to pay to Sarah Louisa Reed, wife of David L. Reed, of the City of New York, it being my intention as a daughter to adopt her, the sum of two thousand dollars a year during her natural life, on her sole and separate receipt, as if she were a *feme sole,* free from the control, interference, or debts of her present or any future husband," and the Court said: "We are not at liberty to decide the question in this case upon our notions of natural equity or justice, provided the settled rule of law fixes the rights of the respective parties and determines the question presented. At common law, annuities were not apportionable, subject however, to two exceptions, viz, where given by a parent to an infant child (*Hay* v. *Palmer,* 2 P. Wms. 501; *Reynish* v. *Martin,* 3 Atk. 330), or by husband to his wife living separate and apart from him (*Howell* v. *Hanforth,* 2 W. Bl. 1016). These exceptions were founded on reasons of necessity, and the presumption that such annuities are intended for maintenance, and are given in view of the legal obligation of a parent to support his infant children, and of a husband to maintain the wife. But with these exceptions it was the uniform and unbending rule of the common law, recognized both by Courts of law and equity, that annuities, whether created *inter vivos* or by

will, were not apportionable in respect of time." In the case of *Henry* v. *Richardson,* 81 Miss. 743, Mrs. L. H. Henry by her will provided for the payment of annuity to Mrs. D. W. Henry during the life of the husband of the testatrix, and CHIEF JUDGE WHITFIELD, after a very careful review of all the authorities, held that the annuity was not apportionable. In the case of *Moyer* v. *Sanford,* decided in 1904, and reported in 63 L. R. A. 625, the Supreme Court of Connecticut held that an annuity is not apportionable, even when given to a widow in lieu of dower.

As we have seen, the same general rule applies to both rents and annuities, and in the case of *Martin* v. *Martin,* 7 Md. 368, JUDGE TUCK said: "The principles of apportionment, particularly as applicable to rent, are discussed, and the authorities collected, in the notes to *Smyth's Case,* 1 Swanst. 337. We consider the rule established, that, with the exception of cases arising under the statute of *George,* rent cannot be apportioned as to time, and that the person entitled to the estate when the rent falls due, must have the entire amount payable at the time." The rule as applied to rents, was again recognized and enforced in the case of *Getzandaffer* v. *Caylor,* 38 Md. 280.

It would seem apparent from the authorities cited, that the annuity in the case at bar cannot be regarded as coming within any of the well defined exceptions to the common law rule. It was not expressly given for support and maintenance; it is not a provision by a husband for the separate maintenance of his wife, or for his widow, in lieu of dower, or by a parent for the maintenance of his child, but a gift by one who was under no obligation to provide for the support of the annuitant. He may have been induced to make her the recipient of his bounty by the fact that he did not give her husband any part of his estate absolutely, but we have no reason to suppose that he intended to do more than the plain language of his will indicates. The testator left a large and valuable estate, and his will, which was said in *Graham* v. *Whitridge,* 99 Md. 269, to be very voluminous, covering over twenty-one

pages of the printed record in that case, was carefully prepared. We must assume that he was familiar with a rule so uniformly recognized in England and in America, prior to the enactment of statutes changing the common law rule, and that if he had intended the annuities given by the eighth article of his will to be apportioned, he would have so directed with the clearness that characterizes the provisions of his will. It is far safer to adhere to settled rules of construction, than to venture upon a strained intrepretation of provisions that, in the light of the rule, are wholly free from uncertainty or ambiguity. It may require Courts, at times, as in the case of *Kearney* v. *Cruikshank, supra,* to surrender their notions of natural equity, but it will tend to secure greater certainty in the administration of justice, and avoid the risk of giving to instruments an effect not contemplated by the makers.

Being unable to concur in the conclusion reached by the learned Court below, we must reverse the order appealed from.

> *Order reversed and petition dismissed, the*
> *costs in this Court and in the Court*
> *below to be paid by the appellees.*

BRISCOE and BURKE, JJ., dissent.