NEW YORK LIFE INS. CO. v. MAJET.

(Division A. April 29, 1935. Suggestion of Error Overruled Nov. 18, 1935.)

[161 So. 156. No. 31662.]

Watkins & Eager, of Jackson, for appellant.

**H. Talbot Odom,** of Greenwood, for appellee.

Argued orally by **Tom Watkins** and **Pat Eager**, for appellant, and by **H. Talbot Odom**, for appellee.

**Cook, J.,** delivered the opinion of the court.

The facts in this case are not in dispute. On April 7, 1920, the New York Life Insurance Company, appellant, issued a life insurance policy to William N. Majet for seven thousand five hundred dollars, with a disability clause which provided that, in the event the insured became wholly disabled by bodily injury or disease, thereby permanently and continuously preventing him from engaging in any occupation whatsoever for remuneration or profit, he would be thereafter relieved, during such disability, of the payment of annual premiums on the policy, and would be paid, during disability, on each anniversary date after the anniversary of the policy next

succeeding receipt of proof in such disability, an amount to equal one-tenth of the face amount of the policy, or seven hundred fifty dollars.

Several years prior to his death, the insured, William N. Majet, became totally and permanently disabled, and thereafter on each anniversary date of the policy, including the anniversary date next preceding the insured's death, the appellant waived the premiums on the policy, and paid to the insured one-tenth of the face thereof, or seven hundred fifty dollars, annually. The insured did not recover from the disability before his death, which occurred on March 23, 1934, six days before the anniversary date of the policy, which was March 29th, at which time an annual payment of seven hundred fifty dollars would have become due and payable. After the death of the insured, the appellant paid to the beneficiary the face of the policy, but refused to pay a proportionable part of the disability benefits, for the reason, as contended by it, that the benefits were, by the terms of the policy, payable only on specified anniversaries of the policy occurring during the lifetime and continued disability of the insured, and was not payable either in whole or in part if the insured was not living and disabled on any such anniversary. Thereafter Mary T. Majet, administratrix of the estate of William N. Majet, deceased, filed this suit, setting forth in the declaration the foregoing facts and averring that the disability benefits provided for in the policy were inserted therein for a valuable consideration of nineteen dollars and thirteen cents, payable annually in advance, and constituted a valid and binding contract to pay the deceased, during his lifetime and continued disability, an annuity of seven hundred fifty dollars, that the said annuity was apportionable under the law, and that there had accrued and was owing to the said William N. Majet, at the time of his death, for the period from March 29, 1933, to the date of his death on March 23, 1934, the sum of seven

hundred forty-three dollars and sixty-seven cents, for which she sued and demanded judgment.

The provisions of the policy covering the disability of the insured are as follows:

"This Policy takes effect as of the 29th day of March, Nineteen Hundred and Twenty, which day is the anniversary of the policy. If the Insured becomes wholly and permanently disabled before age 60, the payment of premiums will be waived under the terms and conditions contained in section 1.

"Section 1—Total and Permanent Disability Benefits.

"Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—then

"1. Waiver of Premium. Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"2. Life Income to Insured.—One year after the anniversary of the Policy next succeeding the receipt of

such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. Such income payments shall not reduce the sum payable in any settlement of the Policy. The Policy must be returned to the Company for indorsement thereon of each income payment. If there be any indebtedness on the Policy, the interest thereon may be deducted from each income payment.

"3. Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the Insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made."

To the declaration the appellant interposed a demurrer, urging as the grounds thereof: (1) That the allegations of the declaration do not state a cause of action; and (2) that the disability provisions sued under and disability payments sued for are not apportionable under the law. This demurrer was overruled, and, the appellant having declined to plead further, final judgment in favor of the appellee for the amount sued for was entered; and from this judgment this appeal was prosecuted.

In view of the conclusion we have reached, this record presents only two questions that are necessary to be decided, and these are: (1) Did the annual disability payments of one-tenth of the face of the policy on the anniversary dates thereof during the lifetime and continued disability of the insured constitute an annuity? And (2) does the amendment of section 2543, Ann. Code 1892, which appeared for the first time in the Code of 1906 as section 2881 thereof (now section 2179, Code 1930), make all annuities apportionable, or should the

annuities therein referred to as being apportionable be limited to annuities created by a life tenant who has demised lands, or annuities arising from a demise to lands?

We have reached the conclusion that the first question stated above must be answered in the affirmative. In Henry v. Henderson, 81 Miss. 743, 33 So. 960, 964, 63 L. R. A. 616, it was said that while an annuity has been variously defined "in general terms, it is 'a yearly payment of a certain sum of money granted to another in fee for life or for years.' " This is the technical meaning of annuity, but in its broader sense it is defined as "a fixed sum granted or bequeathed, payable periodically, but not necessarily annually, subject to such specific limitations as to its duration as the grantor or donor may lawfully impose." 3 C. J. 200. It is generally held that an annuity created by contract differs from one for life insurance, in that the latter provides for the payment of a lump sum conditionally in consideration of periodical payments by the insured, while the former contemplates periodical payments for a stated consideration. 3 C. J. 202. The provisions of the policy contract here involved for the payment of a stated sum on each anniversary date of the policy "during the lifetime and continued disability of the insured" comes clearly within the broad definition of annuity as stated above. By the provisions of the contract there is created, for a sufficient consideration, an obligation to make annual payments of a fixed sum, after total and permanent disability has been established by proof, during the lifetime of the insured, provided the disability is not sooner ended. We think this created a contingent annuity with a specific limitation as to its duration.

The answer to the second question stated above is not free from difficulties. At common law annuities, with certain well-defined exceptions, were not apportionable. For many years prior to the adoption of the Code of 1906, there had existed in this state a statute

making rents which arose from a demise of lands by a life tenant apportionable. This statute appeared as section 2543, Annotated Code of 1892, in the chapter on landlord and tenant. When the Code of 1906 was adopted, this statute was amended by adding at the end thereof the words "and a like apportionment shall be made in the case of annuities," thereby making the entire section read as follows:

Section 2881, Code of 1906 (now section 2179, Code 1930). *"Death of Tenant for Life; Apportionment of Rent.*—When a tenant for life who shall have demised lands, shall die on or after the day when any rent became payable, his executor or administrator may recover from the under-tenant the whole rent due; and if he die before the day when any rent is to become due, he may recover the proportion of the rent which accrued before the time of the death of the tenant. And the tenant for the life of another, his executor or administrator, in case of the death of the person for whose life the estate is held, on or before the day when any rent shall become due shall have like remedy; and a like apportionment shall be made in the case of annuities."

It will be at once conceded that, if the legislature intended by this amendment to make all annuities apportionable, the change was accomplished in the rather unusual way, by attaching it to a section in the chapter on landlord and tenant; and, if the maxim of ejusdem generis is applied strictly, without consideration of the history of the amendment, the evils sought to be remedied, and the apparent purposes sought to be accomplished, the conclusion would follow that the annuities referred to in the amendment of the previous statute as being apportionable, must be limited to annuities created by a life tenant who shall have demised lands, or annuities arising from demised lands.

In the case of Henry v. Henderson, supra, wherein the common-law rule was followed, the court criticized the

rule, and cited numerous cases showing a strong disposition of the courts to break away from the rigor of the common-law rule and to extend the principle of equitable apportionment. In the opinion in the Henry case, supra, which was written by Chief Justice Whitfield, it was pointed out that the matter had been regulated in England by a statute (33, 34 Vic., chap. 35) which made all annuities apportionable and ''declared that annuities should, like interest on money loaned, be construed as accruing from day to day, and shall be apportionable in respect to them accordingly,'' and that some states of this Union had adopted statutes of like effect. It was there pointed out that the only statute we then had on the general subject of apportionment was section 2543, Annotated Code of 1892, which related to rents exclusively; the court saying further: ''It is curious that the legislature, while dealing with the subject of rents—themselves annual returns—should not also have dealt with annuities. Our legislature should promptly pass a counterpart of the act, 33, 34 Vic., chap. 35.''

The case of Henry v. Henderson, supra, was decided at the October, 1902, term in this court, and about two years thereafter, in pursuance of an act of the legislature adopted March 19, 1904, the writer of the opinion in that case was appointed as one of three commissioners to revise all the statute laws of this state of a general nature. When these commissioners had completed their work of revision, they submitted the results thereof to the legislature, which convened in January, 1906, in the form of a dummy or suggested code, to which was attached a preface in which it was stated that the commissioners had construed the act authorizing the revision to mean that they were not limited to a mere compilation of all statutes of a general nature in force at the date of its enactment, but that they should submit for the consideration of the legislature such amendments, al-

terations, or additions as they might deem pertinent to existing general legislation, and which in their judgment would make it more effective. In this dummy code, as submitted to the legislature by the code commission, the proposed amendment of the said section 2543, Annotated Code of 1892, first appeared, and the section, as amended by the commissioners, was adopted and incorporated in the Code of 1906 as section 2881 thereof, and is now section 2179, Code of 1930.

In Henry v. Henderson, supra, in calling attention to the inequitable results which flowed from an application of the rigorous rule of the common law as to apportionment of annuities, the court clearly and manifestly had reference to its application to all annuities, and not to annuities arising from demised lands only. The suggestion therein to the legislature was that it should promply pass a counterpart of the English statute which made all annuities apportionable and declared "that annuities should, like interest on money loaned, be construed as accruing from day to day, and shall be apportionable in respect to them accordingly."

In view of the admonition of the court to the legislature and the language of the opinion in Henry v. Henderson, supra, it is inconceivable that the judge who wrote the opinion in that case a short time before he began his work as a code commissioner would have proposed an amendment to existing laws which was intended to and did apply to a limited class of annuities only; and there is no conceivable reason why in adopting the amendment the legislature should have intended that it should have such limited application. The evil or inequitable results flowing from the common-law rule applied with equal force to all annuities, and to hold that the amendment of our statute applied only to annuities arising from demised land would convict the legislature of intending the inequitable result of making annuities of one class apportionable, while all others remained not apportionable.

In view of the fact that there is no basis in justice or equity for any distinction in classes of annuities in respect to apportionment, and no conceivable reason why the legislature should have intended by this amendment to make one class of annuities apportionable and leave all others subject to the inequitable common-law doctrine, we have reached the conclusion that, by this amendment of our former statute, the legislature intended to abolish the common-law rule, and that thereby all annuities were made apportionable. The court below so held, and its judgment will be affirmed.

Affirmed.