## NEW YORK LIFE INSURANCE CO. v. RIGGINS.

No. 25429.    Sept. 22, 1936.

Rehearing Denied Oct. 20, 1936.

W. F. Wi'son, W. F. Wilson, Jr., and Louis H. Cooke, for plaintiff in error.

Monnet & Savage and Harry L. Atkinson, for defendant in error.

BUSBY, J.   Clay Riggins, a civil engineer, 32 years old, died on May 7, 1931, under circumstances subsequently related herein.   This action is to determine the extent of liability, if any, of the New York Life Insurance Company under two policies of insurance previously issued by it upon the life of deceased.

During his lifetime Clay Riggins procured from the company two policies of life insurance containing "waiver of premium" and "double indemnity" provisions.   The policies were, respectively, for $5,000 and

$10,000 in the event of death rrom any cause, and twice such amounts in the event death should result from "bodily injury effected solely through external, violent and accidental means." When these policies were issued the executors, administrators, or assigns of the insured were named therein as beneficiaries. However, in each of the policies provision was made whereby the insured reserved the right to change the beneficiary. On March 28, 1930, this right was partially exercised. On that date the insured entered into a trust agreement whereby one-half of the death benefits provided in the policies were to be retained in trust by the company and disbursed in monthly payments to Mary Elva Riggins, wife of the insured, as beneficiary of the trust thus created. It was agreed that the amount of each monthly installment should be governed by the extent of the company's total liability, that is, the company as trustee agreed to pay $50 per month upon its liability of $15,000, but it further agreed that if such liability should exceed that sum, one-half of the excess would be applied to increase the amount of such monthly payments, thus in the event of death from accidental means within the meaning of the policy the monthly payments would be $100 per month until one-half of $30,000 together with interest accruals as stipulated between the parties should be paid.

Each of the policies required periodic payment of premiums unless such payment should be excused by reason of the premium waiver features of the policies. Premiums falling due on the two policies became payable, respectively, on December 23, 1930, and December 30, 1930. Neither of these premiums was paid. A 30-day grace period was provided in each of the policies during which it should remain in force subsequent to the due date of the premium. However, this period of grace had in each instance expired when the deceased died on May 7, 1931.

It appears that the deceased conducted his business as a civil engineer in partnership with one W. B. McMasters under the firm name of Riggins and McMasters. This partnership had been formed in the fall of 1929. A large portion of the insured's business was in connection with municipal improvements or projects.

In the spring of 1930, Mr. Riggins became addicted to the excessive use of alcoholic beverages, as a result of which his system was undermined to such an extent that in May, 1930, he was placed in Duke's Sanitarium at Guthrie for treatment. After staying in that institution for some eleven days he showed some slight improvement and returned to Oklahoma City, his place of business and residence. For a short time after removing from the sanitarium he desisted from the use of alcoholic drinks, but again took up the habit in the early summer of 1930. The date of resumption was fixed by some of the testimony as on or about July 1st of that year. There is testimony in the record intended to show that by reason of drink the deceased was suffering from chronic alcoholism and was incapacitated to perform or transact business until the date of his death. We shall defer for the present consideration of the evidence touching upon the condition of the deceased during this time.

On May 4, 1931, Mr. Riggins took about an ounce of bromidia which produced bromidia poisoning. On May 5th he was taken to the Oklahoma City General Hospital. After his admission to the hospital his condition began to improve. On May 7th he was left alone in his room by the nurse for a few minutes. When she returned he was absent from the room. She heard the water running in the bathroom nearby. She busied herself with other matters for a short time and then became alarmed at the failure of the patient to emerge from the bathroom. She knocked at the door. Receiving no response, she called another male patient, who opened the bathroom door. The assured was lying on his right side in the bathtub with the hot water faucet open and the hot water running over his face. The incident is recorded on the hospital records in the following language:

"Face on right arm sideways. No water in tub. Face blue. Scars, superficial, over right cheek, nose lips chin and left cheek. Deep burns over chest and right side down on legs. Both arms burned. Was gasping for breath when found. Found in tub with hot water turned on, face under faucet."

At the trial of this case there was some conflict in the evidence as to whether the deceased had died before or after he was found in the tub. There was also some dispute by way of conflicting inferences as to the probable events leading up to his death which transpired while he was in the bathroom alone. These matters will be more comprehensively considered in the subsequent portions of this opinion.

A few days after the death of the insured, Mrs. Riggins, accompanied by her father, Dr. P. H. Anderson, had a conference with

one William A. Bucholz, the soliciting agent of the company who had secured the insured's applications for the two insurance policies heretofore mentioned in this opinion. The conversation took place at the branch office of the company in Oklahoma City. Mrs. Riggins advised the agent that the insured had been disabled some time prior to the default in the payment of premiums. The agent advised her to secure a number of affidavits depicting the facts relative to the insured's disability and deliver or mail the same to him at the Oklahoma City office. The affidavits were accordingly procured. Some of them were delivered to the agent before June 1, 1931. Others were inclosed with a letter and mailed to the agent by an attorney for the plaintiff on June 18, 1931. These affidavits constituting proof of disability were apparently not received by the home office of the company until the early part of July, 1931.

The company denied liability on the policies upon the single ground that the insured had not been totally and permanently disabled within the meaning of that term as used in the policies at the time default was made in the payment of premiums in December, 1930.

This action was then commenced in the district court of Oklahoma county on the 10th day of October, 1932, by Mary Elva Riggins to recover alleged accrued monthly installments under the trust agreement in an amount commensurate with an asserted aggregate $30,000 liability of the company, that is, Mrs. Riggins sought to recover alleged accrued monthly payments at the rate of $100 per month. It was claimed by her that the death of her husband resulted from bodily injury effected solely through external, violent, and accidental means, thus increasing the liability of the company under the double indemnity features of the policies.

The parties will be referred to herein by their trial court designations when not otherwise identified.

The plaintiff's case proceeds upon this theory: That the insured became totally and permanently disabled on or before September 1, 1930, which was more than three months before the premium paying date of both policies; that he continued to be totally disabled until his death; that under and by virtue of the provisions of each of the policies the company agreed to waive premiums in the event of total disability which had continuously existed for more than three months, provided proof of such disability should be made within six months subsequent to default. Plaintiff takes the position that under the terms of the policies, proof of such claim could be made by the beneficiary as well as by the insured himself, and that such proof was in truth and in fact made within the time stipulated. She further contends that the company cannot now raise the question as to the time within which the proof was submitted by reason of having denied liability upon another and different ground, namely, that total disability of the insured did not exist.

The company, on the other hand, contended in the trial court and reasserts in this court that by reason of the nonpayment of premiums the life policies issued by it had lapsed and become forfeited prior to the death of the insured. It also contends that the insured was not at the time of default in the payment of premiums totally disabled within the meaning of the premium waiver provisions of the policies. It contends in the alternative that even if he was totally disabled, proper proof thereof was not made within the time required by the terms of the policies, and asserts in this connection that the proof was required to be made by the assured during his life and that the beneficiary could not after the death of the insured make such proof of prior disability and claim the benefits of the waiver provisions of the policies. A further alternative contention is made that even if the company is liable at all under the policies, the death of the insured was not accidental and the double indemnity feature of the policies do not apply in this case.

It is at once apparent from the foregoing resume of the positions taken by the respective parties that the policy provisions relating to waiver of premiums are of paramount importance in the solution of this case. Both of the policies contain provisions substantially the same. We quote from one:

"Total and Permanent Disability.

"Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of the policy on which the insured's age at nearest birthday is sixty.

"Upon receipt at the company's home office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously

so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but established that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium—The company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred. * * *

"(b) (Provisions concerning monthly disability payments omitted).

"In the event of default in payment of premium after the insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the insured is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the company not later than six months after said default."

The last premiums fell due on the policies more than 30 days (the grace period) prior to the death of the injured. The liability of the company, therefore, depends upon the foregoing premium .waiver features. The successful invocation of those policy provisions requires both total disability of the insured as defined in the policy and timely proof thereof.

It is one of the contentions of the company that timely proof of disability was not made. In determining this question, we shall assume for the present the existence of the requisite disability. The company emphasizes those portions of the policies by which it agrees to waive premiums in the event proof of disability is received at the company's home office before default in the payment of premiums. It is urged that such proof not having been made **prior to default in the payment of premiums,** the policies in this case lapsed before the death of the insured and were not subject to reinstatement thereafter. Our attention is called to a number of cases in this and other jurisdictions holding, in substance, that where an insurance policy requires proof of disability prior to default as a condition to the operation of the premium waiver provisions, the failure to furnish such proof within the time provided precludes the possibility of claiming the benefit of the premium waiver features.

As a general rule, in the absence of a statute or policy provision to the contrary, the failure to pay premiums on an insurance policy when due will terminate or suspend the rights of the insured and his beneficiaries under the policy in accordance with the terms of such policy, even though the failure to make such payment may have been due to the disability of the insured. Premium waiver features of insurance are usually a matter of contract. The parties may agree that proof of disability is an essential prerequisite of the waiver of premiums. When such proof is required, it is essential that it be made in accord with the terms of the policy. The requirement as to proof being contractual in its nature, controlling importance must in each case be attached to the terms and provisions of the policy before the court.

It is of no special benefit in interpreting the provision incorporated in the contracts now before us to examine cases in which entirely different provisions were interpreted and applied. This subject was exhaustively and carefully considered in the recent case of Mid-Continent Life Ins. Co. v. Harrison, 175 Okla. 543, 53 P. (2d) 266, in an opinion by Mr. Justice Phelps. Various cases from this and other jurisdictions dealing with the subject were analyzed and classified in that opinion. It is therein concluded in accord with the views above expressed that proof of disability prior to default in the payment of premium is not a condition precedent to liability, unless the contract of insurance itself, when considered as a whole, so provides.

The two policies now before us contain provisions relative to the requisite proof of disability. Both of the provisions appear in the excerpt from one of the policies previously quoted.

The company in its argument adopts a position entirely consistent with the first provision, but inconsistent with the second. To sustain the company's position, it would be necessary for us to completely ignore the second provision, upon which the plaintiff relies. By the second provision a retroactive restoration of the policy is authorized in the event proof of disability of the insured is furnished within six months after default. The obvious purpose of the disability premium waiver provision in life insurance contracts is to prevent a loss of the benefits of such contract in the event an insured by reason of disability is unable to meet the periodical premiums provided by the policy. As pointed out in the case of Mid-Continent

Life Insurance Co. v. Harrison, supra, this in itself is an additional feature of the insurance. The policies under consideration, by their definition of total and permanent disability, provide for the operation of these premium waiver features in the event of either of the two classes of disability, both of which are classified as total and permanent. One class of disability is that which in truth and in fact is total and permanent. The other is total and continuous. It must continue for a period of three consecutive months or more. Obviously many cases may arise in which an individual, though totally disabled, is unable to establish the actual permanent character thereof. In such event his rights are protected only by the continuation of such disability for a period of three months. Suppose a case in which total disabi'ity, the permanent character of which cannot be established, commences only one month before the premium paying date and continues thereafter the requisite three months. Proof of actual total permanent disability cannot be made prior to the due date of premium. Similarly proof of the continued existence of such disability for a period of three months prior to the premium due date is impossible because the liability had not then existed for a sufficient length of time.

It is at once apparent that in order for the disability feature of the policy to be effective in accord with the terms thereof, some provision must exist for disability after the premium paying date. Such a provision was and is incorporated in the policy now before us which authorizes the proof to be made within six months after default in the payment of premiums.

We therefore conclude that under the terms and provisions of the policy now before us it was competent that proof of disability be made within six months after default in the payment of premiums and that such proof when made within the time specified operated to effect a retroactive restoration of the policy.

It is also contended by the company that even though proof of disability can be made within six months, it must be made by the insured himself. In this case the insured died before the expiration of six months. His death, of course, terminated his ability to make the requisite proof. The question arises whether the beneficiary can make the same. Referring again to the provisions of the policies by which we are governed in this case, we find therein no requirement that the proof be made by the insured in person. If we were to read into the policies

such a requirement, we would add thereto a provision favorable to the insurance company which does not appear therein. The law takes cognizance of the fact that forms of insurance policies are prepared by the insurance companies and thus in cases of ambiguity or uncertainty in the construction or meaning of the terms or provisions of such a policy, that construction is adopted in law which is most favorable to the insured. Federal Life Ins. Co. v. Lewis, 76 Okla. 142, 183 P. 975. Most assuredly, in view of this established judicial attitude, we should not add to the terms of a policy a provision not appearing therein which would preclude beneficiaries from making the requisite proof.

The Court of Appeals of Ohio in the case of McColgan v. New York Life Ins. Co., 172 N. E. 849, was called upon to consider the identical policy provisions now presented to us. The conclusion of the court in that case is expressed in the body of the opinion in the following language:

"The policy being silent as to who shall give said notice, and there being no provision that the notice shall be given during the lifetime of the insured, it is only reasonable to assume, in the absence of express declarations upon these subjects, that anyone interested in the policy as a beneficiary may give said notice, either before or after the death of the insured; and if one who has a right to give the notice dies during the period of limitation without having given the notice, of course the other beneficiary may do so within the limitation period, unless prevented by the terms of the policy. By the plain and unambiguous words of the policy, it is kept in fu'l force in event the insured is totally disabled on the due date of a premium, if such disability continues for a definite period of time and timely notice of such total disability is given to the company."

The company in this case calls our particular attention to the case of Brams v. New York Life Ins. Co. (Pa.) 148 A. 855. which is said to be in conflict with the views expressed by the Ohio court. The cited case, in so far as it is said to touch upon the question now before us, is not entirely satisfactory. While there is some language in the opinion in that case tending to support the contention of the company herein, it would appear from an examination of the decision that paramount importance was attached to the fact that the only proof furnished at all was insufficient to establish total permanent or continuous disability. It is said in the opinion that "here the only paper relied on is the letter of September 6th stating merely that the insured was sick

and would pay as soon as he got well, clearly not a compliance with the provisions of the contract." Regardless of the purport of the Pennsylvania decision, we are impressed with the soundness of the reasoning of the Ohio court.

In the case of Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 P. 82, a case dealing with fraternal insurance, this court said in paragraph 4 of the syllabus:

"A policy issued by a fraternal life insurance company provided that a life benefit member, suspended for the nonpayment of a monthly rate, etc., may be reinstated within a certain time by complying with the by-laws of the company. Held, that the right to reinstatement does not die with the insured, but passes to the beneficiary under the policy, and may be exercised at any time during the period of extension."

In New York Life Ins. Co. v. Noble, 34 Okla. 103, 124 P. 612, we considered a statutory provision requiring a demand which was silent as to who should make the demand. It was held that the same could be made by the beneficiary by reason of the silence of the applicable statutory provision. This court therein said:

"The provision in the statute concerning 'demand made' does not expressly require that this 'demand' shall come from the insured. Where there is no agreement in the application or policy, the statute provides, as has been seen, 'such single premium may be applied in either of the modes above specified at the option of the owner of the policy,' etc.

"In the case of Nielsen v. Prov. Savings L. Assur. Soc., 139 Cal. 332, 73 P. 168, 96 Am. Rep. 146, the question of the right of the beneficiary to exercise the option provided by the New York statute was before and squarely decided by the court. Syllabus 'D' is as follows: 'The provision of the statute that the reserve 'shall on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance,' etc., 'is not to be construed as requiring that such demand and surrender shall be made by the insured, but it may be made by the beneficiary of the policy after the death of the insured. The statute should receive a liberal and reasonable construction.' This doctrine is sustained in Wheeler v. Connecticut Mutual Life Insurance Co., 82 N. Y. 543, 37 Am. Rep. 594. Counsel for the company cite no authority opposed to the above rule, but content themselves with saying that it is doubtful such rule obtains "

The foregoing expressions by this court are by analogy in accord with the view expressed by the Ohio court. We therefore conclude that, since in the policy now before us no requirement is contained as to who shall make the proof of disability, such proof may be made by the beneficiary after the death of the insured.

The company also contends that the proof made in this case was not made in time. It is said that under the terms and conditions of the policy it was necessary that such proof be submitted to the home office of the company in New York within six months after default. In that portion of the policy authorizing submission of proof within six months after the disability there is no requirement that the proof be submitted at the **home office of the company.** It is only required that the requisite proof be submitted **to the company.** The provision relating to the submission to the home office of the company appears in the first provision of the policy previously alluded to and upon which the plaintiff in this case is not relying.

Since the controlling provision of the policy does not require that proof be furnished to the home office of the company, we need not consider the effect and force of such a provision when proof is furnished to a general agency required to be maintained within the state by section 10516, O. S. 1931.

The premiums were due upon the policies in this action on December 23rd and 30th, respectively. Six months from the due date of the respective premiums was June 23rd and 30th, respectively. A portion of the affidavits constituting the proof of disability were delivered to the soliciting agent of the insurance company at his request shortly before June 1, 1931. The remainder of the affidavits were mailed to him on June 18, 1931. Thus all of the proof intended to show the disability of the insured was delivered to the soliciting agent within six months from the due date of the premiums. It appears, however, from the testimony introduced by the company that these affidavits were not transmitted to the home office, or rather not received by the home office, until about July 6, 1931.

It is one of the contentions of the company that the delivery of the proof of disability to its soliciting agent did not constitute receipt of such proof by the company. It is asserted in this connection that the soliciting agent had no authority to act for the company in the matter of receiving the proof. The plaintiff has three different alternative answers to this contention. She urges, first, that the receipt of such proof

was within the apparent and ostensible authority of the soliciting agent; second, that the denial of liability on the part of the company upon the single ground that the disability did not in fact exist constituted a waiver of the company's right to deny liability upon the theory that timely proof of disability was not made; third, that the six months' period did not commence to run until after the policies were in default and that the policies were not in default until the expiration of the 30 days' grace period provided in each of them. Thus it is argued that the six months' period within which proof should. be made to the company did not expire until July 23rd and 30th, respectively. These dates were subsequent to the receipt of proof at the home office of the company. Either one of these asserted answers is sufficient in itself, if sustainable.

The company, in support of its contention that the soliciting agent was without authority to receive proof in its behalf, introduced evidence tending to show that the actual authority of the soliciting agent was sufficiently limited to exclude the power to receive proof on the particular class of claims herein involved. The plaintiff, however, contends that though actual authority of the soliciting agent to receive the proof did not exist, the agent was clothed with apparent or ostensible authority in this particular. The trial court instructed the jury upon the theory of the plaintiff. The company complains of the submission of this issue.

In support of the action of the trial court, the plaintiff calls our attention to evidence appearing in the record that the soliciting agent,- Bucholz, who appeared in the trial of the case as a witness, testified as follows:

"Q. As a matter of fact, isn't it the universal custom and practice here in this Oklahoma City office for the agents to assist their clients and policyholders and beneficiaries in preparing proofs of disability and proofs of death? A. That is true. Q. And isn't it a fact that it is the universal custom and practice here in Oklahoma City with your company for the agents to receive the proofs of disability and proofs of death after they have been completed, just as you instructed Mrs. Riggins to turn these affidavits over to you when they had been completed? A. Well, I wouldn't say it is the universal practice. Some agents do not render that service; they don't take that much interest. Others do, and it just depends if the case was written by an agent who is still with the company and wants to give that service. Q. You have always rendered that service to your policyholders, haven't you? A. I have tried to, yes, sir. Q. Have you ever, during the course of 17 years' or 18 years' experience in connection with the New York Life Insurance Company, been instructed or advised by the company that you should not receive proofs of death or proofs of disability from the policyholders? A. No."

One Don R. Nicholson testified in substance that he was an agent of the company with his office in the branch office at Oklahoma City; that he was familiar with the custom of the company with respect to the receipt of proof of death and proofs of disability, and that it was the custom of the company to refer death claims to the agent who had solicited the insurance and to encourage such agents to assist in the preparation of claim papers and receive the proofs essential to establish claims. He testified that the customary procedure was for the cashier of the branch office to notify the agent who wrote or solicited the policy involved, and that the company encouraged the agents to indulge in the practice of receiving the proof. To similar effect was the testimony of one Ed J. West, cashier of the branch office of the defendant company located in Oklahoma City.

It is true that the claim under consideration in this case was rather unusual in its characteristics. But it was nevertheless a claim for disability and death benefits arising under the policies herein involved. There was nothing in the policies themselves to indicate any limitation upon the authority of the agent to act any differently upon this particular claim than such agents would act upon other death claims. We think the evidence submitted upon this point was sufficient to authorize a finding that the soliciting agent was clothed with the apparent authority to act for the company in receiving the proofs required to be made in order to establish this claim.

The doctrine of apparent authority is an important branch of the law of agency. In 2 Am. Jur., Agency, sec. 101, the general principles are stated in the following language:

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts

has been conferred, are also binding upon the principal. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. Accordingly, as defined by the American Law Institute, an apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another."

In the case of Harnden v. Milwaukee Mechanics' Insurance Co., 164 Mass. 382, 41 N. E. 658, the fourth paragraph of the syllabus reads as follows:

"The fact that local agents of an insurance company are not authorized by their commission to receive proofs of loss will not prevent a delivery to them of proofs of loss being a delivery to the company, where the policy issued does not notify the policyholder that they are agents of limited powers, and it appears that they had apparent authority by custom to receive proofs of loss."

To the same general effect, see Couch's Cyclopedia of Insurance Law, vol. 2, section 523, page 1525; see, also, Hanon v. Kansas City Life Insurance Co., 269 Ill. App. 135, and Mangiameli v. Southern Surety Co. (Neb.) 197 N. W. 946.

The proof submitted in this case was sufficient to authorize the submission of the question of apparent authority of the soliciting agent to the jury. The trial court did not err in this respect.

Since the contention of the plaintiff that the soliciting agent was vested with apparent authority to receive the proof is sustainable, the other two asserted answers to the company's contention as previously set forth need not be considered in this opinion.

The company also contends that even though the proof of disability was submitted in a timely and proper manner, the insured was not in fact totally disabled within the meaning of that term as used in the policy. The policy in defining disability provides that the same shall "be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit." It seems to be well recognized in law that the mere fact that an insured may have been able to perform a few occasional or trivial acts pertaining to his business does not prevent him from being properly classified as being totally disabled within the meaning of that term as used in insurance policies.

Thus in the case of Continental Casualty Co. v. Wynne, 36 Okla. 325, 129 P. 16, it was said by this court in paragraph 7 of the syllabus:

" 'Total disability', under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists, although the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation."

See, also, Ozark Mutual Life Ass'n v. Winchester, 116 Okla. 116, 243 P. 735.

The question of fact as to whether the insured was in this case totally disabled within the meaning of the policy was one of the most sharply contested issues in the case. Voluminous testimony was introduced by both sides upon the issue. The medical testimony produced by the plaintiff strongly supports the view that by reason of the insured's constant use of alcoholic drink he became a victim of chronic alcoholism. Both medical and lay testimony supports the view that by reason of his condition he performed practically no work during a period of time beginning about the first day of September, 1930, and terminating with his death in May, 1931. His partner in the civil engineering business, Mr. McMasters, testified, in substance, that he was at the office only a few times during this period of time and that while there he was unable to perform the duties required by the business. During a portion of the time it was necessary to put him in charge of a male nurse. A detailed discussion of all the evidence touching upon this issue as reflected by the record before us would be wholly impracticable. We have carefully examined this evidence and find from our examination that it is ample to establish the fact that the insured was, during the period of time last above mentioned, totally incapacitated for the performance of any work except possibly the most trivial tasks on a few occasions. The proof was sufficient to establish the total disability of the insured within the meaning of that term as used in the policies.

In the brief of the defendant it is pointed out that the disability benefits of the policies are not available if the disability of the insured resulted from self-inflicted injury. It is conceded by the plaintiff in her brief that the total disability resulted from the constant excessive use of intoxicating liquor

by the insured to the extent of causing him to be afflicted with chronic alcoholism and which ultimately resulted in the use of drugs and sedatives in an attempt to allay nervousness.

Neither of the parties to this controversy submit any authorities bearing directly upon the question thus presented, but the plaintiff in her brief seeks to draw an analogy between the contractual provision under consideration relating to disability and contractual provisions frequently occurring in insurance policies which excuse the insurance company from liability in case death is self-inflicted or suicidal. These last-mentioned clauses have generally been held by the court to contemplate the intentional self-destruction by the insured and do not excuse the company from liability where the insured intentionally committed an act which unexpectedly results in death. In other words, an act intentionally committed which unexpectedly results in death does not constitute self-destruction. Our attention is called to Courtemanche v. Supreme Court I. O. F., 136 Mich. 30, 98 N. W. 749. In that case the syllabus reads as follows:

"Though insured's death was due to his voluntary taking of carbolic acid, yet it not having been with intent to cause death, but to frighten his wife into giving him money, recovery may be had on the policy, excepting 'assurance against self-destruction or suicide.'"

In the body of the opinion the following illustration is used:

"If one point a loaded pistol at himself, with no intention to fire, his death, being caused by its unintentional discharge, would be accidental, and not suicidal, and the beneficiary under such a policy as this should be allowed to recover for the death, though self-destruction in one sense, in another was not, the immediate cause being the unexpected and accidental discharge, and not the pointing of the pistol, which was in itself a harmless, though perhaps a risky act. The death in such a case is a fortuitous result, not even a probable one, and such deaths are covered by policies."

See, also, 37 C. J. 552, sec. 303; Northwestern Mutual Life Ins. Co. v. Hazlett, 105 Ind. 212, 4 N. E. 582; Michigan Mutual Life Ins. Co. v. Naugle, 130 Ind. 79, 29 N. E. 393.

We think the reasoning adopted in the foregoing cases relating to self-destruction clauses appearing in insurance policies is by analogy applicable to clauses relating to self-inflicted disability. The purpose of these provisions in policies is to prevent persons from intentionally disabling themselves and thereby creating liability under the disability features of his policy. A man who cuts off his own leg to disable himself should not be entitled to the benefits from the insurance company. But if he does an act not intended or calculated to create an injury or bring about a disability, but which does in fact exceed his expectations, and, without any intent on his part, creates a disability, the injury is not self-inflicted, and the disability provisions of an insurance policy containing such a clause are still available for the benefit of the policyholder. Thus in this case the insured's act in drinking intoxicating liquor was unquestionably intentional, that is, he intended to drink the liquor, but we think it is likewise a fair and reasonable inference from the evidence in this case that he did not in fact intend to bring about the condition known as chronic alcoholism resulting in partial brain destruction as detailed in the evidence now before us. We therefore conclude that the disability in this case was not self-inflicted within the exclusion clause contained in the policy.

It is also urged by the company that the insured's death did not result from violent, external, and accidental means within the double indemnity provisions of the policy. Considerable evidence was introduced on both sides touching upon this feature of the case, from which it is inferred by the company that the death of the insured possibly resulted from heart disease. It will be recalled that the events immediately preceding the death of the insured transpired in a bathroom behind closed doors with no one else present. Some of the testimony indicates that the deceased breathed a few times after he was removed from under the hot water faucet in the bathtub. Other testimony indicates that he did not breathe after the time he was found. Some of the testimony is to the effect that the scalds from the hot water pouring on his face were sufficient to produce death. Other testimony tends to establish the fact that under the circumstances death must have resulted from some other cause, such as, for instance, heart disease.

It is apparent that there is an element of speculation in the cause of death which is beyond human power to eliminate. The plaintiff urges that the deceased probably accidentally fell in the bathtub while the hot water was running. In support of this contention it is reasonable to assume that the insured did not intentionally lie down in the bathtub under a faucet from which boiling water was pouring. See Prudential Ins. Co. of America v. Tidwell, 163 Okla. 39, 21 P. (2d) 28. After a careful review of the evi-

dence touching upon this issue, we are unable to say that the jury arrived at an erroneous conclusion concerning the accidental nature of the death of the insured. Nor are we able to find in the instructions by which this issue was submitted any prejudicial error.

Another contention of the company is that the defendant was improperly forced to trial over its objection before the expiration of ten days after the final issues were made up. This is a procedural question and arises under the following state of facts as shown in the record. This case was set for trial on September 28th. Several months prior to this time the issues had been made up by pleadings filed on behalf of the respective parties. On September 27th, the plaintiff was permitted to file an amendment to her first amended petition. The defendant was then given until September 29th to plead to this amendment and the trial was continued until October 2nd. The company contends that under section 582, C. O. S. 1921, it was entitled to ten days after the issues were made up before the trial of the cause.

The section of the statute invoked does not apply. When the issues have once been made up and more than ten days thereafter have expired, amendment of the pleadings thereafter so as to change the issues does not re-invoke the operation of the statute. Such was our holding in Lynch v. Peterson, 91 Okla. 28, 215 P. 617. When new issues are framed by amendments to pleadings, the question of whether a continuance should be granted rests within the sound judicial discretion of the court. Lynch v. Peterson, supra. There is no attempt on the part of the company in this case to show an abuse of discretion in this particular.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and WELCH, JJ., absent.