NEW YORK LIFE INS. CO.
v. SULLIVAN, Ex'x.

No. 30857. Sept. 15, 1942.

*129 P. 2d 71.*

W. F. Wilson, of Oklahoma City, for plaintiff in error.

Harold Sullivan, of Oklahoma City, for defendant in error.

DAVISON, J. This case is presented on appeal from the district court of Oklahoma county. It was instituted in that court on the 28th day of November, 1941, by Mary Queen Sullivan, executrix of the state of Ernest Sullivan, deceased, as plaintiff, against the New York Life Insurance Company, as defendant.

The plaintiff sought to recover $755.28 alleged to be due by reason of total disability under the disability provision of an insurance policy issued by the defendant company.

The defendant presented a demurrer to the plaintiff's amended petition, which was by the court overruled. The defendant elected to stand on its demurrer, and judgment was entered for the plaintiff. The defendant has appealed, appearing herein as plaintiff in error, thus reversing the order of appearance in this court. Our continued reference to the parties will be by their trial court designation.

The facts are undisputed. On October 27, 1917, the defendant company issued a policy of life insurance to Ernest Sullivan. The policy was for $10,000. In addition to the risk assumed on the life of the insured, certain provisions were incorporated in the policy providing benefits in the event of his total disability. In substance, these provisions obligated the company to waive the premiums and pay annually one-tenth of the amount of the policy during the disability. The company was compensated for the disability benefits by a specified portion of the annual premium, namely, $14 per year. The annual premium on the policy, aggregating $304.80, fell due on October 23rd of each year.

On August 30, 1940 (the insured being totally disabled and being then 59 years of age) proof of existing disability of the insured was furnished the company. The disability continued until the death of the insured on June 1, 1941. By reason of the existence of the disability the company waived the premium which fell due on October 23, 1940. It, however, denied any other liability under the disability provisions of the policy.

The position of the company is that the disability benefits provided constitute an annuity created by contract. It urges that under the common law and under its contract the liability was to pay a stipulated sum annually and on a specified date, and that unless the insured should be living and disabled on the date specified, no obligation existed to pay either the annual payment or any part thereof. In other words, the company invokes the common-law doctrine that generally speaking an annuity is not apportionable.

This doctrine of nonapportionability of annuities was not at its inception without exception and the modern judicial tendency has been to extend the exception. On this subject it is said in 2 Am. Jur. at pages 830 and 831:

"The general rule both of law and equity is that, where an annuity, whether created inter vivos or by will, is payable on fixed days during the life of the annuitant, who dies before the day, the personal representative is not entitled to a proportional part of the annuity. This principle of the nonapportionability of an annuity, properly and technically so called, rests upon the doctrine of the entirety of contracts, and proceeds upon the interpretation of the contract by which the grantor binds

238

himself to pay a certain sum on fixed days during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation. It results in the general rule that if the annuitant dies before or even on the day of payment, his representatives can claim no portion of the annuity for the current year. Of course any provision in the contract itself which discloses an intention that the annuity should be apportioned will be sufficient to take a case out of the general rule. Moreover, in some jurisdictions in this country the common-law rule as to nonapportionment of annuities is altered by statute, and aside from statute, the tendency of the courts is to narrow the rule and enlarge the exceptions thereto."

And at page 832 of the same text it is said:

". . . . Moreover, the inequity and arbitrariness of the general rule have been so generally conceded that modern legislative and judicial decisions have steadily tended to narrow the rule and enlarge the exceptions, so that it may be safely stated that the trend of judicial opinion is now in favor of applying the equitable principle of apportionment in any case where the annuity is made for the purpose of maintenance and support."

Since one of the exceptions which renders an annuity apportionable is the contract by which it is created, we should first turn to that instrument. The disability provisions read (with deletions of immaterial intervening provisions):

"New York Life Insurance Company

Agrees to Pay

\* \* \*

To Pay to the Insured

Permanent Disability

One-tenth of the face of this policy per annum, during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof.

\* \* \*

(Second Page of Policy)

"Section 1 — Total and Permanent Disability Benefits

"Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days . . . then

"1. Waiver of Premium. — Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived. . . .

"2. Life Income to Insured.—One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. Such income payments shall not reduce the sum payable in any settlement of the Policy. . . .

"3. Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.

"The . . . annual premium for the Total and Permanent Disability Benefits is $14.00, and is included in the premium stated on the first page of this policy. Any premium due on or after the anniversary of the Policy on which the age of the Insured at nearest birthday is 60, shall be reduced by the amount of premium charged for the Disability Benefits."

In connection with the construction of the foregoing policy provisions it is important to bear in mind that we are dealing with a type of contract which was prepared by one of the parties, namely, the defendant company, and that doubt as to the meaning and effect of such a contract is resolved against the party who is responsible for the terms of the instrument. 15 O. S. 1941 § 170. And the matter to which a contract relates claims a degree of consideration in resolving doubt as to its meaning. 15 O. S. 1941 § 163.

Thus when ambiguity exists in the meaning of an insurance contract, the doubt is resolved against the company and a construction adopted consistent with the object sought to be accomplished. This, of course, does not mean that the language of the contract is forced beyond its natural meaning. New York Life Ins. Co. v. Morgan, 187 Okla. 214, 101 P. 2d 826; New York Life Ins. Co. v. Riggins, 178 Okla. 36, 61 P. 2d 543; Maryland Casualty Co. v. Whitt, 167 Okla. 261, 29 P. 2d 65.

The particular question involved in this case has not previously been passed upon by this court but there have been numerous decisions in other jurisdictions dealing with the problem. See annotations, 116 A. L. R. 135; 101 A. L. R. 899. In fact, several cases deal directly with the particular policy now before us. The courts, however, are not in accord in their views as to the apportionability of disability benefits under the policy. Some hold the annual payments unapportionable. Some hold them apportionable. Peek v. New York Life Ins. Co., 206 Iowa, 1237, 219 N. W. 487; New York Life Ins. Co. v. Finkelstein, 212 Ind. 155, 8 N. E. 2d 598; Brownstein v. New York Life Ins. Co., 158 Md. 51, 148 A. 273; Newberger v. New York Life Ins. Co., 56 R. I. 442, 186 A. 472; New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675; New York Life Ins. Co. v. Majet, 173 Miss. 870, 161 So. 156; Cullum v. New York Life Ins. Co., 197 S. C. 6, 14 S. E. 2d 361; Levy v. New York Life Ins. Co., 286 N. Y. S. 905, 159 Misc. 431; Sampson v. New York Life Ins. Co., 175 Tenn. 59, 131 S. W. 2d 152.

An examination of the foregoing cases discloses that the courts are somewhat evenly divided on the question. We shall not attempt a detailed analysis of the decisions or the reasons upon which they are individually based. Typical, however, of the cases supporting the view that the annual disability payments are apportionable is the Maryland case of Brownstein v. New York Life Ins. Co., supra, from which we quote:

"The prime object of the disability provisions of the policy was to secure a 'life income to assured' if he should 'become wholly disabled by bodily injury or disease,' and thereby be 'permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit'; the condition precedent to the insured's right to the enjoyment of the disability benefits being that he should submit to the company due proof that such disability had existed for 60 days before default in the payment of premium. The language of the contract so quoted, and particularly the conspicuously printed words, 'Life Income to Insured,' were bound to attract the attention of the insured, and are accepted by this court as evidence of the meaning and purpose of the contract.

"The insured certainly had every reason to believe that, if he should be so overcome by bodily injury or disease as to make him unfit to engage in any occupation, he would be relieved of the distress involved in such a condition, and that, during his lifetime, he would have what the appellee promised, namely, a 'life income to insured,' and that this would be secured to him to the last days of his life and when most needed, and, in our opinion this is what the disability provision of the policy said to him. The policy contemplated an insurance for a permanent and continuous disability during the life of the assured, and therefore, for the purpose of practical convenience, it was necessary to fix in the policy a time when such payments would be made; and this was done by making the pay day on the anniversary date of the policy. So long as the assured lived the payments would

be made to him, when alive and disabled, on the anniversary date of the policy, and this would be a compliance with the letter of the contract. If the assured should die before the anniversary date, the amount of the insurance that had accrued prior to the day of his death could not be paid to him, as he was not surviving on the anniversary date, and this again would gratify the terms of the contract; but the stipulations of the policy nowhere negative the accrual from day to day, until that of death, of the benefits under the policy for total and permanent, continuous disability. When it is considered that this feature of the policy is in lieu of the assured's lost earnings, from day to day, and because of his disability is to provide maintenance, there seems to be no reasonable ground for denying the personal representatives of the assured the right to recover the benefits which had accrued to the day of the death of the assured. The company drew the contract, and it is a rule common to the construction of all written instruments that it is to be taken, in cases of doubtful meaning, against the draftsman."

We approve the construction placed upon the contract by the Maryland court. It is within the scope of the meaning of the language used in the contract.

A representative group of the courts of our sister states have said the contract now before us should be construed in such a manner as to render the annual payments apportionable. It would be presumptuous indeed for us to say the language of the insurance contract is not susceptible of the meaning attributed to it. Maryland Casualty Co. v. Whitt, supra.

Having decided that it is susceptible of that meaning and construction, we are, under the prevailing rules in this jurisdiction which require the resolution of doubt in favor of the insured in cases of uncertainty (see cases cited, supra), obligated to approve that construction as did the trial court.

The judgment of the trial court is therefore affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. RILEY, J., absent.